IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 13, 2012 Session

## ROBERT W. PORTER v. BRANDI PORTER (KIMBRELL)

**Direct Appeal from the Circuit Court for Franklin County**
**No. 13435-CV      J. Curtis Smith, Judge**

---

**No. M2012-00148-COA-R3-CV - Filed January 25, 2013**

---

### CONCURRENCE

_____

HOLLY M. KIRBY, J., CONCURRING:

While I agree with the majority opinion in this case, I write separately to say that I view the question of whether to affirm the trial court's decision to be a much closer question than is indicated by the majority opinion. I concur only because of the high standard of appellate review of the trial court's decision.

I am troubled by Mother's frequent moves - with the parties' children - from one boyfriend's house to her mother's house to another boyfriend's house. She may, for now, be married and settled with her current husband. However, whatever Mother's moral failings, this series of decisions demonstrates a willingness to uproot the children repeatedly and expose them, intimately, to the tumultuous navigation of her romantic relationships. This demonstrates both poor judgment and an unwillingness to place her children's interests above her own.

I am also troubled by Mother's pattern of prevarication, particularly in matters that reflect on her instability, poor parenting judgment, and willingness to expose the parties' children to adult matters and conflicts. On appeal, we are required to defer to the trial court's assessment of the witnesses's credibility in the absence of clear evidence to the contrary, and so I defer to the trial court's assessment of Mother's overall credibility. However, Mother's pattern of dissembling must be considered in the ultimate decision on whether it serves the children's best interest to remain in her custody.

Particularly disturbing is Mother's indefensible, gratuitous remark to the parties' then eight-year-old son in the WalMart store. Apparently out of the blue, and for no reason except to use her own son to spite Father, Mother tells the poor bewildered child that a DNA test was

performed to determine if Father was the son's biological father, implies that Father wanted to be rid of the child, and points to a stranger who supposedly would have been willing to take over Father's responsibilities to the son.

Not surprisingly, the son apparently brought the matter up to Father, and he had to respond. Was his response imperfect? No doubt. But Mother had placed Father in an untenable position, and I for one cannot conceive of a perfect response in those circumstances. To say that Father should not have discussed the parties' divorce with the children is simplistic and not grounded in reality. Mother had told the son about the DNA test to determine his parentage - a reasonable request, by the way, in the wake of the parties' divorce - in a manner that was calculated to lead the son to wonder if Father wanted him and was trying to get out of being the son's parent. Father of course could not just deny that the DNA test took place, because it did. This left him in the position of trying to address very adult matters in a way that was truthful and age-appropriate and would answer the son's articulated questions as well as his unspoken fears, planted by Mother, that Father did not want him. This is no easy task.

Rather than simply saying that both parties share the blame in this matter, I place the lion's share of blame squarely with Mother. As noted above, Mother's frequent moves with the children into one boyfriend's home after another indicates a tendency to place her own needs above those of her children. The WalMart episode speaks directly to Mother's character and her fitness as a parent; it demonstrates an alarming willingness to inflict psychological harm on her own child for no purpose other than to hurt her ex-husband and undermine his relationship with his children.

On appeal, we are not allowed to substitute our judgment for that of the trial court, and are permitted to reverse the trial court's decision on the designation of primary residential parent only if it rises to the level of an abuse of the trial court's discretion. In light of that very high standard of review, I concur in the majority's affirmance of the trial court' decision to leave Mother as the children's primary residential parent. But, to me, it is a close question indeed.

 

 

_____

HOLLY M. KIRBY, J.